## J. SÉMÈRE *v.* W. SÉMÈRE.

With a view to emancipate her slave, *A.* passed an act of sale of him to *B.*, *B.* attempted, but failed, to effect his emancipation, and offered to return him to *A.*, who refused to receive him, and abandoned him to *B.* The heirs of *A.* sued *B.* to recover the slave, but, under the facts of the case, the court maintained the title of *B.*

APPEAL from the District Court of St. Martin, *A. Voorhies*, J.

*C. H. Mouton* and *M. Voorhies*, for plaintiff. *A. DeBlanc & Fuselier* and *Simon & Gayry*, for defendant and appellant.

MERRICK, C. J. This case was before us last year, and remanded to take the answers of the defendant to interrogatories on facts and articles., 10 A. 704.

Those interrogatories are copied into the opinion in the report of the case to which we refer.

Defendant says, in answer to the first interrogatory : " *Marie Marthe Sémère*, passed a sale of the slave *Joseph* or *Charles*, for the purpose of having him emancipated. As I could not succeed to do so, I went to *Miss Sémère* (about a year before her death) to give her back the slave, she abandoned the slave to me."

Ans. 2d. " I did not pay any price for the slave."

Ans. 3d. " I do not remember to have so stated to any one. In several instances, the slave having misbehaved, I went to *Miss Sémère* (named *Marthe*) to tell her to take back the slave—she said the slave was mine—she would have nothing to do with the slave."

The fourth answer does not appear to have been copied into the record.

Ans. 5th. "That was never agreed to, to wit: In case the emancipation should not be completed, the sale of the 5th of May should be annulled. At least I have no recollection of it."

After the case was remanded, the plaintiff propounded further interrogatories, which are answered as follows:

1st. " You have said, in answer to the previous interrogatories propounded to you, that you went to give back to *Mrs. LaMarthe* the slave *Joseph:* When was it ? and was *Joseph* with you at the moment ?"

Ans. " When I went to *Miss Marthe Marie Sémère*, to tender the slave *Joseph*, the said slave was not with me, he being runaway at that time. I do not recollect the time I went there."

2d. "Have you, within one year from this date, (the 27th of May, 1856,) acknowledged and declared to any one, that the slave, *Joseph*, did not belong to you ? Have you made the same *declaration* within six months from this date? Have you made it three months since? Have you stated the fact in the latter part of March, 1856."

Ans. "I have, within one year from this date, declared that the slave, *Joseph*, was not my property. I do not know whether I have said so since six months, for there are so many persons that question me about this matter, I may have said so to get rid of them."

3d. Have you not, within nine months from the death of *Marie Marthe Sémère*, declared to some one, that the slave, *Joseph*, was not your property . Have you not delivered said slave to *Julien Sémère*?"

Ans. "I did not deliver the said slave to *Julien Sémère*, but he took the said slave by force, that is, the slave went over to *Julien Sémère*, who, when requested by me to deliver back the slave, refused to do so."

The instrument under which the defendant claims title, purports to be an absolute sale of the slave in question, by *Marie Marthe Sémère*, to him, with the usual covenants of warranty, &c. The consideration expressed, the payment of which was acknowledged, was six hundred dollars. This act of sale was dated 5th of May, 1849, and passed before a Notary Public and two witnesses.

In December, of the same year, the testatrix made her will in nuncupative form by public act, by which she made provision for the emancipation of five other of her slaves, but she took no notice of the slave which she had previously sold to the defendant. *Julien Sémère* was appointed and instituted her universal legatee and heir.

It is alleged in the plaintiff's petition, that the act of sale was simulated and made upon the express condition that, in case said slave should not be emancipated, said sale would be annulled and avoided. These grounds are urged upon our attention in argument, and also, that the obligation to emancipate the slave, was in the nature of a resolutory condition, according to Art. 2040 of our Code, which, when accomplished, operated the revocation of the obligation, placing matters in the same state as though the obligation had not existed.

If the plaintiff succeeds in this action, it will be because the answers of the defendant, to interrogatories on facts and articles, have added something to his, apparently, perfect title, which subjects it to some one of the objections raised as aforesaid, by plaintiff's counsel. Is the sale simulated? There is nothing in the answer of the defendant from which it can be inferred that the title was a mere sham, not intended to invest *William Sémère* with ownership and property in the slave. On the contrary, the act of sale was absolute on its face, and the party interrogated does not state any fact tending to establish the pretentions of the plaintiff, that the sale was, what is technically considered, a simulation. Was the sale upon the express condition, that in case the slave should not be emancipated, that the sale would be null? The party interrogated, says expressly, that there was no such condition agreed upon. This answer, which stands in the place of title, and which cannot be contradicted by parol, negatived the idea that the sale was upon a condition.

If it be admitted that the sale made by the testatrix was subject to the resolutory condition implied in all commutative contracts, it does not follow that the sale, in this instance, can be dissolved on that account; for, it appears that during the lifetime of testatrix, the defendant applied to the proper authority for the emancipation of the slave, but, owing to his bad conduct, in vain, and it is expressly admitted, that proceedings for this purpose are still pending in the Parish of St. Martin, but are opposed by sundry planters of said parish. There is nothing to show that defendant has not faithfully endeavored to fulfill the duties imposed upon him by the act of sale. He has not, therefore, incurred the penalty of the dissolving condition. If we look to the object and intention of the donor, we believe her intention is more likely to be carried out, by leaving the title to the slave, where she placed it, and with a person who has shown a disposition faithfully to perform the trust imposed upon him, than by leaving him with the plaintiff who does not appear to have such object in view.

The instrument, although it purports to be a sale, being in due form for such act, may be treated as an act of donation. 10 L. R. 85. It may be considered that it was made with a condition, or charge upon the donee, that he should apply for the emancipation of the slave; yet if we take this favorable view of the conditions of the parties, there is no reason to declare the donation a nullity for the non-execution of the conditions imposed by the donee. C. C. 1555.

The offer to deliver or reconvey the slave to the testatrix, did not reinvest her against her will, and without any contract between the parties, with a title to the slave. C. C. 2431. *Id quod nostrum est, sine facto nostro ad alium transferi non potest.* The verbal declarations of the defendant to third persons, made without any intention of conveying his ownership to any one, cannot be considered as having the effect of defeating his title. The judgment must be affirmed.

It is, therefore, ordered, adjudged and decreed by the court, that the judgment of the lower court be affirmed with costs.